# EXHIBIT A

**Exhibit A - Page 1**

Atkinson-Baker, Inc.
www.depo.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

AMERY GASPARD, et al.,          )
                                )   Case No.:
            Plaintiff,          )   5:15-cv-01802-VBF-KES
                                )
       vs.                      )   CERTIFIED COPY
                                )
DEA TASK FORCE, et al.,         )
                                )
            Defendants.         )
------------------------------- )

DEPOSITION OF

AMERY GASPARD

SAN BERNARDINO, CALIFORNIA

JANUARY 29, 2020

ATKINSON-BAKER, INC.
(800) 288-3376
www.depo.com

REPORTED BY:  LINDA L. HUDDLESTON, CSR NO. 11160

FILE NO: AE00DB7

**Exhibit A - Page 2**

Atkinson-Baker, Inc.
www.depo.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

AMERY GASPARD, et al., )
                      )   Case No.:
        Plaintiff,    )   5:15-cv-01802-VBF-KES
                      )
    vs.          .    )
                      )
DEA TASK FORCE, et al., )
                      )
        Defendants.   )
----------------------------)

        Deposition of AMERY GASPARD, taken on behalf of Defendants, at 385 North Arrowhead Avenue, Fourth Floor, San Bernardino, California, commencing at 9:55 a.m., Wednesday, January 29, 2020, before Linda L. Huddleston, CSR No. 11160.

**Exhibit A - Page 3**

Atkinson-Baker, Inc.
www.depo.com

A P P E A R A N C E S

FOR PLAINTIFF:

AMERY GASPARD, Plaintiff in Pro Se
1001 3rd Street
Space 35
Calimesa, California 92320-1231
(909) 705-7275

FOR DEFENDANT COUNTY OF SAN BERNARDINO:

SAN BERNARDINO COUNTY COUNSEL
BY:   LAURA L. CRANE, ESQ.
DEPUTY COUNTY COUNSEL
385 North Arrhowhead Avenue
Fourth Floor
San Bernardino, California 92415-0140
(909) 387-5449

FOR DEFENDANT CITY OF SAN BERNARDINO:

BEST, BEST & KRIEGER, LLP
BY:   DAMIAN A. NORTHCUTT, ESQ.
2855 East Guasti Road
Suite 400
Ontario, California 91761
(909) 989-8584

**Exhibit A - Page 4**

Atkinson-Baker, Inc.
www.depo.com

Q.   Reduced?

A.   I reduced it.  They reduced it because of the state laws.

Q.   What is your understanding of those state laws?

A.   The state law is you're only allowed a certain amount per month --

Q.   Okay.

A.   -- and I was double that.  I was taking double that.

Q.   So it wasn't really for financial reasons; it was because that's the law now?

A.   Well, actually, it was financial reasons, too, that I was taking it.  It wasn't because I stopped talking it.  The reason for not taking is because of the state and the county or the federal government decided that it wasn't the right amount for a person to be taking, so they cut it down.

Q.   Okay.

And so after your second surgery in '87, you're still taking double the current state limit of pain medication?

A.   No.  At that time, it wasn't.

Q.   No?

A.   That time, it was not.

Amery Gaspard
January 29, 2020

23

**Exhibit A - Page 5**

Atkinson-Baker, Inc.
www.depo.com

Q.  Okay.

A.  Okay.  At that time, the doctors could recommend as much as they wanted to.

Q.  Okay.  So it's the current state?

A.  Current state.

Q.  Okay.

A.  When the current state came in, they cut it down.

Q.  Do you remember about how much you were taking?

A.  Yeah.  I was taking about ten a day and now I take six.

Q.  Okay.

So from '87 to about a year ago, you were taking about ten a day?

A.  Right.

Q.  Okay.

And were you using anything to assist you in walking?

A.  Yeah.  I walked with a walker.  I walked -- I actually had some times where I was in the wheelchair.

Q.  And that was from '87 on?

A.  Yeah.

Q.  Okay.

And when you've used a wheelchair or walker,

**Exhibit A - Page 6**

Atkinson-Baker, Inc.
www.depo.com

have you always been able to transfer yourself from your wheelchair to a chair?

A. Sometimes. Sometimes I don't move too right, you know? Sometimes like today, I didn't know this thing (indicating) swiveled as much as it did, I went to sit in it and it swiveled around and there was no chair there.

Q. But generally you could put enough weight on your legs to transfer?

A. As a rule, yeah. There's been times I tried to put it on there, and I can't; my legs just give out, period. They just quit.

And there's times where my legs think -- I think they're there, and they're not.

Q. And then I have in your medical records that since '85, at least, you have -- if you don't take pain medication, you live with pain at a level of 10 out of 10?

A. You bet.

Q. And that's been since '85 and on?

A. (Witness moves head up and down.)

Q. Is that yes?

A. Yeah, yes.

Q. Okay.

A. You got me on that one.

**Exhibit A - Page 7**

Atkinson-Baker, Inc.
www.depo.com

Q. And even though you're taking only six today, is it the same that if you don't take any pain medicine, it would be a 10 out of 10?

A. No, no. When I take the pain medication, it isn't a 10 out of 10, when I take the pain medication.

Q. No, I said without.

A. Without?

Q. I'm sorry, I interrupted.

A. Without. Without, I'm going to have pain.

Q. So --

A. I don't know what it would be, because I haven't been without for a long time.

Q. Okay.

So you don't know today if your pain's the same as it was in '88?

A. No.

Q. Okay.

All right. So you've been to jail more than once; is that right?

A. Yeah, since that night.

Q. Well, so "that night," you're referring to the day that you're complaining about when the City arrested you; is that right?

A. Um-hmm.

Q. Yes?

**Exhibit A - Page 8**

Atkinson-Baker, Inc.
www.depo.com

A.   Yes.

Q.   Okay.

I actually understand there was two arrests though by the City; is that right?

A.   Yes.

Q.   Okay.

I'm going to help you a bit, because in your lawsuit you complain about falling in the shower in March 2013.

A.   Yes.

Q.   Okay.  But I have a grievance from you saying that you fell in the shower in October 2013.  Does that make sense to you?

A.   No, it doesn't, because I made the grievance right there in the jail.  So it should have been marked the right date, unless I put the wrong date now.

Q.   I think you might be misremembering when it happened?

A.   I put the grievance in the day it happened.

Q.   Let me show you the grievance --

A.   Okay.

Q.   -- and see if we can figure out when this fall happened; okay?

A.   Okay.

Q.   All right.

**Exhibit A - Page 9**

Atkinson-Baker, Inc.
www.depo.com

So I'm going to give you what we're going to mark as Exhibit 1 here. Why don't you review that. Let me know if it refreshes your recollection at all.

A.   (Witness complies.)

No, this is the day it happened, okay. So whatever day this was that I got on here, it should have been the date that it was written down. I just probably misput the wrong date down when I was making paperwork or something. But this is the day it happened right here (indicating).

(Plaintiff's Exhibit 1 was marked for identification.)

Q.   BY MS. CRANE:   All right.

So you agree that Exhibit 1 accurately reflects --

A.   Yes.

Q.   -- the day that you're complaining about in this lawsuit?

A.   Right.

Q.   Okay.

A.   And.

Q.   You can see that you wrote down that it happened on October 24th, 2013?

A.   Right.

Q.   Okay.

**Exhibit A - Page 10**

Atkinson-Baker, Inc.
www.depo.com

So I understand you had been booked in jail in March 2013 as well.  I could tell you that our records show that --

A.  Okay.

Q.  -- okay?

So I'm just going to kind of go over generally what happens when you get booked into the West Valley Detention Center.

Just so you know, all the exhibits go to the court reporter when you get them, because she's going to attach them so you have them; okay?  And I might refer to that again later.

So generally when you -- can you talk about the process when you generally get booked into the jail, you go into intake and screening?  How does it work with you with the wheelchair and all that?

A.  Well, at first when I went in there, they wouldn't -- this is really confusing.

Q.  Just tell me generally, and then we'll go to the October booking; okay?

A.  Generally when you go in, you get booked into West Valley, you -- they take you in the back, back door or where they actually book you in, but -- and they'll take you from the squad car to a room, sit in that room until they get you booked in, and then they

**Exhibit A - Page 11**

Atkinson-Baker, Inc.
www.depo.com

Q. Why were you using a wheelchair, then?

A. I told you, there's certain periods I had to use a wheelchair. I couldn't walk.

Q. Was it just that the pain was worse at that time or --

A. Yeah.

Q. -- did you have an injury that made it worse?

A. No. I just -- the pain would get worse. And it subsides sometimes, you know. So -- and I think at that point, I was taking more than six a day. But I would fluctuate my medication. I never took a regular ten-a-day. I took it according to how I felt. I mean, ten would be the limit I would go to. So I could take less pain in one day, less pills in one day than I took the next day.

Q. But at that time, you could transfer from a wheelchair to a chair?

A. Yes.

Q. Okay.

And would you occasionally use a walker, a cane?

A. No. At that time, no. I used a wheelchair, period.

Q. How long had that been happening?

A. It had to have been a month that I had been in

**Exhibit A - Page 12**

Atkinson-Baker, Inc.
www.depo.com

a wheelchair, totally in the chair.

Q. And when you booked, they let you keep your wheelchair; is that right?

A. Yes, yes.

Q. And you were put in a lower tier on a lower bunk?

A. Right.

Q. You were put in Unit 11?

A. 13.

Q. You think you were in 13?

A. I think I was in 13, yes.

Q. Why do you think you were in 13?

A. That's what I had in my paperwork when I booked out.

Q. Is there a difference between 11 and 13, that you know of?

A. No.

Q. And you were arrested in October. That was -- Ms. Hrindich was also arrested at the same time?

A. Yes.

Q. Now, just to -- I'm going to orientate us to the time again; okay? So as you recall, Exhibit 1 shows you fell in the shower October 24th; okay?

A. Yes.

**Exhibit A - Page 13**

Atkinson-Baker, Inc.
www.depo.com

Q. I have that you were booked October 1st. Does that make sense to you?

A. Yeah. Yes.

Q. Okay.

And then I have that October 5th, you had an emergency visit to the ARMC, Arrowhead, because of back pain. Do you remember that?

A. No, I don't. I tried to forget as much as I could about that incident, about that time in my life.

Q. So it sounds like it definitely could have happened, and you just don't remember?

A. It could have, yes.

Q. Okay.

Because I have that you complained the pain was 10 out of 10, and you had an MRI done of your spine at that time?

A. Oh, yes. I do remember that now.

Q. All right.

And then you remember they talked to you about that your spine has degenerative changes?

A. I have scoliosis and my spine is degenerating.

Q. I don't know why the lights are flickering.

A. It's because you're asking me these questions, and they aren't right. And I tell you, it's going to get worse too.

**Exhibit A - Page 14**

Atkinson-Baker, Inc.
www.depo.com

Q.    We have a generator.   It's okay.

And what's your understanding of what degenerative changes are?

A.    Degenerative changes are when your spine degenerates in one area, it's going to put more pressure on another, which I know.   And it's going to take mobility away and make it so you can and cannot move.

Q.    Do you understand how degenerative changes occur?

A.    No.   I never really got into that much.   I just let the doctor do his job.

Q.    Okay.   I'll just say that I'm laughing because the lights keep flickering.

So do you understand it's a combination maybe of just getting older and, in part, nonuse?

A.    No.

Q.    No?   Okay.

A.    No.

Q.    And then I have that before you fell in the shower, I have several health requests for more pain medication.

A.    Yes.

Q.    Okay.

A.    Because I was taking -- you got to remember, I

**Exhibit A - Page 15**

Atkinson-Baker, Inc.
www.depo.com

was taking ten a day when I went in there.  And they tried to give me three a day and that was putting me in excruciating pain.  In a lot of pain.

Q.  So you were very unhappy with how much pain medication the jail was giving you?

A.  Well, of course.

Q.  Okay.

All right.  So let's go ahead and go over the fall.

A.  Okay.

Q.  You kind of touched on it, but now that we understand more about how you brace yourself in the shower and that there's no chair, if you could go over how it happened that day.

A.  Okay.  All I can say to you is this:  It was extremely slick in there from the guy that just came out of there.  I don't know how much soap he used or what.  But it was slick and he didn't rinse it down.  When I got in, I put my arm on the thing and my feet went out underneath from me.  And I spun around and I hit my head on the wall that the shower head was on, and that's the last that I remember.

Q.  Okay.  So you never seen the shower that slick before?

A.  Well, no.  I've never been in one that slick

**Exhibit A - Page 16**

Atkinson-Baker, Inc.
www.depo.com

before, and I can say that.

Q. I mean, you'd been in the jail for three weeks at that point?

A. Um-hmm.

Q. Yes?

A. Yes.

Q. And you had -- this was not your first time at the West Valley Detention Center; right?

A. Yes, it was.

Q. Well, I have you were booked in March.

A. Oh, that was -- that was like for two hours, three hours.

Q. Oh, okay. I thought it was several days.

A. No. That was for like -- I didn't even know West Valley, what it looked like. It's not like I've been in jail that many times, you know. It's just -- it was a snowball, that's why I went to jail, and it was based on a stupid -- on a stupid mistake that the police made. Let me tell you that right now.

Q. Well, I don't -- I'm going to let Mr. Northcutt go into that; okay?

A. Yeah, okay.

Q. But in the three weeks you had been at the West Valley Detention Center, you'd never seen the shower that slick before?

**Exhibit A - Page 17**

Atkinson-Baker, Inc.
www.depo.com

A.   No, never.

Q.   Okay.  And you didn't get in and ask "Somebody clean this up"?  You didn't ask for a deputy, you tried to take the shower instead?

A.   I didn't know it was that slick until the water hit it.  When I got in there and turned water on, I realized that it was that slick.

Q.   And about how long from when you entered to when you fell?

A.   I don't know.  Thirty seconds.  The minute the water hit that and I started to move, that's when I slipped.

Q.   And what do you feel the jail did to cause you to fall?

A.   Well, I think there should have been some kind of railings up around there.  That would have been a lot better, you know.

Or, like you said, had a chair in there that I could have sat in.  That would have been even better. I sit in a chair at home.

Q.   Yeah, but you hadn't had a chair in three weeks.

A.   No.

Q.   And so you said you lost consciousness?

A.   Yeah, for a short time.  Really short time.

Exhibit A - Page 18

Atkinson-Baker, Inc.
www.depo.com

Q.   Do you know about how long?

A.   I don't know.  I can't tell you, but I know that the water was still running when I woke up.  So couldn't have been that long.

Q.   Did any of the other inmates comment about how long?

A.   No.  They just -- all they were doing is just yelling for them to get me out of there.  So when they finally find out the deputies weren't going to get me out, they decided to get me out themselves and put me in the wheelchair.

Q.   Now is the shower in your cell or is it separate?

A.   It's in the cell.

Q.   Did you have a bunk mate?

A.   No, no, no.  I -- it was in a one-bed -- it was a one-bed area out in front of all the other beds.  They're bunk beds like.  And on the bottom floor, there's a row of just single beds.  There's no top or bottom.  It's just bottom.

Q.   So it's in the unit?

A.   Right.

Q.   And so how did -- do you know how the other inmates knew that you had fallen?

A.   They were standing in line waiting for the

**Exhibit A - Page 19**

Atkinson-Baker, Inc.
www.depo.com

REPORTER'S CERTIFICATE

I, LINDA L. HUDDLESTON, CSR NO. 11160, Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Reading and signing was requested.

Dated this 17th day of February, 2020.

*Linda L. Huddleston*

LINDA L. HUDDLESTON, CSR NO. 11160

Amery Gaspard
January 29, 2020

109

**Exhibit A - Page 20**